# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**JAMES DAVIS,**  PETITIONER

**V.**  NO. 1:01CR16-P

**UNITED STATES OF AMERICA,**  RESPONDENT

## O P I N I O N

This matter is before the court, *sua sponte*, for consideration of dismissal. Petitioner files this action pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner was indicted on four counts of scheming to defraud FDIC insured banks by cashing forged checks using forged identification documents in violation of 18 U.S.C. § 1344. Petitioner negotiated a plea agreement, with the assistance of counsel, which provided that he would plead guilty to count one charging the cashing of a $1447.32 check and the Government would dismiss the remaining counts and not charge him with any related offenses. The plea agreement expressly provided that there was no agreement as to the sentence to be imposed, which was in the sole discretion of the court and stated that no promises or representations had been made to the defendant as to what punishment the court might impose.

On August 21, 2001, petitioner appeared with his counsel before the court and tendered a guilty plea to count one of the indictment in accordance with the plea agreement. He was sworn and the court advised him that he could be sentenced to the maximum penalty of 30 years incarceration and five years supervised release, which he acknowledged he understood. The prosecutor, at the court's direction, read the plea agreement into the record and petitioner and his counsel confirmed it. In response to questioning by the court, the petitioner acknowledged the following: that he had

discussed with counsel how the sentencing guidelines might apply to his case; he understood that his sentence could not be determined until a presentence report (PSR) had been completed and that the sentence imposed may be different from any estimate counsel may have given him; he understood that the court had the authority to depart from the guidelines and impose a sentence more severe than called for by the guidelines and that if the sentence was higher than he expected he would not be allowed to withdraw his guilty plea; that no one had made any promises to him in addition to the plea agreement to cause him to plead guilty; and that no one had made any prediction or promise as to the sentence he would receive.

The petitioner agreed with the prosecutor's statement of the factual basis of his plea, which described a two-month bank fraud scheme involving forged payroll checks on several commercial enterprises payable to various individuals using false drivers' licenses in their names with a photograph and description of the petitioner as identification. This resulted in an attempted loss of $11,237.67 and an actual loss of $8021.14.

The court found that the petitioner knew his trial rights, the maximum possible punishment, that he was voluntarily pleading guilty, and accepted the plea.

The PSR determined the base offense level was 6, plus a 3 level increase for an intended loss of more than $10,000, and a 2 level increase for more than minimal planning adjusted down 2 levels for acceptance of responsibility, for a total offense level of 9. The PSR documented 20 criminal history points, which was seven more than the minimum for a criminal history category VI, which with an offense level 9 equaled a sentence range of 21 to 27 months. The PSR noted that the court might consider whether category VI adequately reflected the seriousness of petitioner's past criminal conduct or the likelihood that he will commit other crimes and whether a departure from the guideline sentence was warranted.

The Government, citing petitioner's 32 year history of alternating episodes of crime and

incarceration involving 26 convictions, moved for an upward departure on the same grounds as noted in the PSR. The defense objected that the motion was untimely and argued that category VI adequately reflected the seriousness of the charged offense.

At sentencing there were no objections to the PSR and the court considered the arguments for counsel on the motion for an upward departure. The court granted the motion and ruled that Offense Level 16 was appropriate. This increased the guideline range from 21 to 27 months to a range of 46 to 57 months, and the court sentence petitioner to 48 months.

Petitioner filed an appeal of the sentence, and the Court of Appeals affirmed the sentence on July 11, 2002, stating that "[u]nder the circumstances presented to the district court, the extent of the upward departure was reasonable." *United States v. James Davis*, No. 01-60972, 5th Cir., Jul. 11, 2002 (unpublished).

In the instant petition, Davis alleges that his counsel rendered ineffective assistance in several different respects, which will be addressed in order.

He first contends that counsel was ineffective by failing to investigate and object to the inclusion in his criminal history of a 1993 conviction in Desoto County, Mississippi, for an armed robbery of a restaurant in 1991. He states that he was never convicted of and did not commit this offense. The defendants agree that petitioner was not the James Davis who was convicted of that offense.

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test applies to retained counsel as well as appointed counsel. *See Bonvillain v. Blackburn*, 780 F.2d 1248 (5th Cir. 1986); *Murry v. Maggio*, 736 F.2d 279 (5th Cir. 1984). In *Strickland*, the Supreme Court held that before post-conviction relief can be granted for ineffective assistance of counsel, the petitioner must establish: (1) that counsel's performance was deficient in

that if fell below an objective standard of reasonable professional service; and (2) that this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different. *Strickland*, 466 U.S. at 687, 688; *see also Sawyer v. Butler*, 848 F.2d 582 (5th Cir. 1988) (*superseded on other grounds*, *Sawyer v. Butler*, 881 F.2d 1272 (5th Cir. 1989)); *Lavernia v. Lynaugh*, 845 F.2d 493 (5th Cir. 1988); *Bridge v. Lynaugh*, 838 F.2d 770 (5th Cir. 1988); *Thomas v. Lynaugh*, 812 F.2d 225 (5th Cir. 1987); *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986). Thus, both a deficiency and resulting prejudice must be shown.[1] *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986).

Under the deficiency prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687; *see also Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). However, the Fifth Circuit has noted the following:

> In determining whether counsel's performance satisfies the requirements of the Sixth Amendment, we must inquire whether, considering all the circumstances, counsel's performance was reasonable under prevailing professional norms. Judicial scrutiny of counsel's performance must be highly deferential; we must make every effort to eliminate the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time. [Lavernia v. Lynaugh, 845 F.2d 493, 498 (5th Cir. 1988)].

In applying the first *Strickland* criterion, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action might be considered sound trial strategy. *Bridge v. Lynaugh*, 838 F.2d at 773; (quoting *Strickland v. Washington*, 466 U.S. at 689). Finally, counsel

---

[1] However, there are circumstances where prejudice can be presumed. *See United States v. Cronic*, 466 U.S. 648, 659 (1984); *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990).

is given great deference with a strong presumption that counsel has exercised reasonable professional judgment. *Martin v. McCotter*, 796 F.2d 816, 817 (5th Cir. 1986).

The *Strickland* two prong test applies to challenges to guilty pleas based on ineffectiveness of counsel, and "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions...And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not be challenged as unreasonable." *Strickland* v. Washington, 466 U.S. at 668, 691 (1984). Counsel's duty to investigate is not without limit and the scope of that duty may be limited by the defendant's lack of cooperation. See *Bell v. Watkins*, 692 F.2d 999, 1009 & n. 11 (5th Cir. 1982), *cert. denied*, 464 U.S. 843 (1983); *Gray v. Lucas*, 677 F.2d 1086, 1094 (5th Cir. 1982). "In general, counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997).

The original petition does not allege that petitioner informed counsel that he was not the James Davis who was convicted of the armed robbery noted in the PSR. After the Government's response pointing out that he had failed to do so, petitioner submitted a reply to the Government's answer, in which he did in fact tell his attorney of the case of mistaken identity and that his counsel failed to follow through on the issue.

Even, assuming *arguendo* that counsel was informed of the mistaken conviction, there is no showing that petitioner was prejudiced by the conviction being included. Petitioner had well over 20 convictions, and the petitioner's past was clearly indicative of future recidivism. Multiple convictions that were out of date were not considered when determining the increase in offense level,

and the court could have done so. "If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider the information in determining whether an upward departure is warranted under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.2 cmt. 8. See also, *United States v. Chappell*, 5 F. 3d 1094, 1102 & n. 33 (5th Cir. 1993), *cert. denied*, 510 U. S. 1183, 1184 (1994) and *United States v. Carpenter*, 963 F.2d 736, 744-745 (5th Cir. 1992), *cert denied*, 506 U.S. 927 (1992).

Eliminating one erroneous conviction from petitioner's prolific criminal record does not significantly change the circumstances justifying the upward departure. The "result is not unreasonable in light of the evidence of numerous instances of past criminal conduct, which were not considered in the criminal history calculation, and the overwhelming indication that the defendant was inclined to return to a similar course of behavior." *United States v. Ashburn*, 38 F.3d 803, 810 (5th Cir. 1994)(en banc).

Petitioner further alleges that his counsel ineffectively failed to investigate and object to a three-point enhancement for a Tennessee conviction of forgery less than $500 for which he received a five-year sentence of imprisonment concurrent with two controlled substance convictions. He contends that the offense was a misdemeanor, resulting in two criminal history points rather than three. However, § 39-14-114 of the Tennessee Code, which defines the offense of forgery, states that "(c) An offense under this section is punishable as theft pursuant to § 39-41-105, but in no event shall forgery be less than a Class E felony." Section 40-35-111 provides that the authorized punishment for a Class E felony is not less than one year nor more than six years. Hence, counsel committed no error in failing to object to this issue in the PSR.

Petitioner additionally claims ineffective assistance in that his counsel failed to object to an increase in his base offense level by three levels for an intended loss of more than !0,000, and by two levels for more than minimal planning. However, the petitioner stated to the court that he agreed

with the prosecutor's statement that the total attempted loss was $11, 237.67, and his assertion that his bank fraud scheme did not involve more than minimal planning is blatantly erroneous. Petitioner cashed a series of fraudulent payroll checks throughout the state of Mississippi over a period of two months. These checks were drawn on four commercial accounts, and were made in the names of various persons. Drivers' licenses in those names, with a photograph and description of the petitioner on each license, were used as identification in cashing the checks. There can be no question whatsoever that this constituted more than minimal planning and this claim is without merit.

Petitioner next contends that his counsel was ineffective for not objecting to the imposition of a five-year term of supervised release, contending that he should have been sentenced to only one year of supervised release for a Class E felony. However, he was convicted of bank fraud in violation of 18 U.S.C. § 1344, which provides for a term of imprisonment of not more than 30 years. Section 3559(a)(2) provides that if the maximum term of imprisonment authorized by the statute defining the offense is 25 years or more the offense is classified as a Class B felony. Section 5D1.2(a) of the Sentencing Guidelines specifies that "if a term of supervised release is ordered, the length of the term shall be:(1) at least three years but not more than five years for a defendant convicted of a Class A or Class B felony" Therefore, there was nothing objectionable with respect to the five-year period of supervised release and no error on counsel's part in not objecting.

Petitioner also claims that his counsel was ineffective in counseling his plea, resulting in entry of an uninformed and involuntary plea of guilty. Specifically he contends that his counsel "assured me that my Total Offense Level would be 9, and my Criminal History Category would be VI. Giving me a guideline range of 21 to 27 months, which is the reason I pled guilty."

Contrary to this claim, the plea agreement which petitioner signed states that he agreed to plead guilty to a charge that "carries maximum possible penalties of 30 years imprisonment ... and

5 years supervised release .... There is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court subject to Federal Sentencing Guidelines, which have been explained to the defendant .... Apart from being advised of the applicability of the U.S. Sentencing Guidelines, no promise or representation whatsoever has been made to defendant as to what punishment the Court might impose ...." As pointed out earlier, the terms of the plea agreement were read into the record at the change of plea hearing, and petitioner stated under oath that he agreed with it. The courts "give great weight to the defendant's statements at plea colloquy" - "greater weight than ... unsupported, after-the-fact, self-serving revisions." *United States v. Cothran*, 302 F.3d 279, 283-284 (5th Cir. 2002).

Having carefully considered petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, the court finds that petitioner has stated no grounds warranting relief.

An appropriate final judgment will issue.

This the 2nd day of February, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE